1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page.]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG GREENHALGH, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, and NATALIE R. SACKS, | |
| Defendants. | |

Plaintiff Doug Greenhalgh ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Caribou Biosciences, Inc. ("Caribou"

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Caribou common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about July 23, 2021 (the "IPO" or "Offering"); and/or (b) Caribou securities between July 23, 2021 and December 9, 2022, both dates inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Caribou is a clinical-stage biopharmaceutical company that engages in the development of genome-edited allogeneic cell therapies for the treatment of hematologic malignancies and solid tumors in the U.S. and internationally. The Company is developing, among other product candidates, CB-010, an allogeneic anti-CD19 CAR-T cell therapy[1] that is in a Phase 1 clinical trial, referred to as "ANTLER", to treat relapsed or refractory B cell non-Hodgkin lymphoma ("r/r B-NHL").

3.     According to Defendants, CB-010 is the first clinical-stage allogeneic anti-CD19 CAR-T cell therapy with programmed cell death protein 1 ("PD-1") removed from the CAR-T cell surface by a genome-edited knockout of the *PDCD1* gene, which purportedly sets CB-010 apart from other allogeneic CAR-T cells by, *inter alia*, improving the "persistence" of antitumor activity.

---

[1] Anti-CD19 CAR-T cells are administered as a type of therapy for relapsed/refractory aggressive B-cell lymphomas (*i.e.*, cancers that start in the lymph system).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.     On July 1, 2021, Caribou filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on July 22, 2021 (the "Registration Statement").

5.     On July 23, 2021, pursuant to the Registration Statement, Caribou's common stock began publicly trading on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "CRBU". That same day, Caribou filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, collectively with the Registration Statement, the "Offering Documents").

6.     Pursuant to the Offering Documents, Caribou issued 19 million shares of common stock to the public at the Offering price of $16.00 per share for proceeds of $282.72 million to the Company, before expenses, and after applicable underwriting discounts.

7.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) CB-010's treatment effect was not as durable as Defendants had led investors to believe; (ii) accordingly, CB-010's clinical and commercial prospects were overstated; and (iii) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

8.     On June 10, 2022, Caribou issued a press release reporting "[p]ositive" data from the ANTLER Phase 1 clinical trial.  Among other results, Caribou reported that "[a]t 6 months following the

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

single dose of CB-010, [only] 40% of patients remained in CR [complete response] (2 of 5 patients) as of the May 13, 2022 data cutoff date", prompting investor concern over the durability of the CB-010 treatment.

9.     On this news, Caribou's stock price fell $1.78 per share, or 20.41%, to close at $6.94 per share on June 10, 2022.

10.     Then, on December 12, 2022, Caribou issued a press release "report[ing] new 12-month clinical data from cohort 1 in the ongoing ANTLER Phase 1 trial, which [purportedly] show[ed] long-term durability following a single infusion of CB-010 at the initial dose level 1 (40x106 CAR-T cells)." Among other results, Caribou reported that "3 of 6 patients maintained a durable CR at 6 months" and "2 of 6 patients maintain a long-term CR at the 12 month scan and remain on the trial", thereby confirming investor fears that the CB-010 treatment lacked significant durability.

11.     On this news, Caribou's stock price fell $0.81 per share, or 9.03%, to close at $8.16 per share on December 12, 2022.

12.     As of the time this Complaint was filed, Caribou common stock continues to trade below the $16.00 per share Offering price, damaging investors.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Caribou's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

16.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Caribou is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

17.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18.     Plaintiff, as set forth in the attached Certification, acquired Caribou common stock pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO, and/or purchased or otherwise acquired Caribou securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Defendant Caribou is a Delaware corporation with principal executive offices located at 2929 7th Street, Suite 105, Berkeley, California 94710.  The Company's common stock trades in an efficient market on the NASDAQ under the trading symbol "CRBU".

20.     Defendant Rachel E. Haurwitz ("Haurwitz") has served as Caribou's President, Chief Executive Officer, and a Director of the Company at all relevant times.  Haurwitz signed or authorized the signing of the Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

21.     Defendant Jason V. O'Byrne ("O'Byrne") has served as Caribou's Chief Financial Officer at all relevant times.  O'Byrne signed or authorized the signing of the Registration Statement filed with the SEC.

22.     Defendants Haurwitz and O'Byrne are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

23.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Caribou's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Caribou's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Caribou, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

24.     Caribou and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

25.     Defendant Ryan Fischesser ("Fischesser") has served as Caribou's Controller at all relevant times.  Fischesser signed or authorized the signing of the Registration Statement filed with the SEC.

26.     Defendant Scott Braunstein ("Braunstein") has served as a Director of Caribou at all relevant times.  Braunstein signed or authorized the signing of the Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

27.     Defendant Andrew Guggenhime ("Guggenhime") has served as a Director of Caribou at all relevant times.  Guggenhime signed or authorized the signing of the Registration Statement filed with the SEC.

28.     Defendant Jeffrey Long-McGie ("Long-McGie") served as a Director of Caribou at the time of the IPO.  Long-McGie signed or authorized the signing of the Registration Statement filed with the SEC.

29.     Defendant Natalie R. Sacks ("Sacks") has served as a Director of Caribou at all relevant times.  Sacks signed or authorized the signing of the Registration Statement filed with the SEC.

30.     The Exchange Act Individual Defendants and Defendants Fischesser, Braunstein, Guggenhime, Long-McGie, and Sacks are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

31.     As directors, executive officers, and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Caribou common stock in the IPO for their own benefit and the benefit of Caribou.  The Securities Act Individual Defendants were key members of the IPO working group and executives of Caribou who pitched investors to purchase the shares sold in the IPO.

32.     The Exchange Act Defendants and the Securities Act Individual Defendants are sometimes collectively, in whole or in part, referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

33.     Caribou is a clinical-stage biopharmaceutical company that engages in the development of genome-edited allogeneic cell therapies for the treatment of hematologic malignancies and solid tumors in the U.S. and internationally.  The Company is developing, among other product candidates,

7

CB-010, an allogeneic anti-CD19 CAR-T cell therapy that is being evaluated in the ANTLER Phase 1 clinical trial as a treatment for r/r B-NHL.

34.     According to Defendants, CB-010 is the first clinical-stage allogeneic anti-CD19 CAR-T cell therapy with PD-1 removed from the CAR-T cell surface by a genome-edited knockout of the *PDCD1* gene, which purportedly sets CB-010 apart from other allogeneic CAR-T cells by, *inter alia*, improving the "persistence" of antitumor activity.

35.     On July 1, 2021, Caribou filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on July 22, 2021.

36.     On July 23, 2021, pursuant to the Registration Statement, Caribou's common stock began publicly trading on the NASDAQ under the ticker symbol "CRBU".  That same day, Caribou filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

37.     Pursuant to the Offering Documents, Caribou issued 19 million shares of common stock to the public at the Offering price of $16.00 per share for proceeds of $282.72 million to the Company, before expenses, and after applicable underwriting discounts.

**Materially False and Misleading Statements Issued in the Offering Documents**

38.     The Offering Documents stated that Caribou "ha[s] demonstrated in preclinical models that the PD-1 knockout [effect of CB-010] improves the persistence of antitumor activity by disrupting a pathway that leads to rapid T cell exhaustion."

39.      Particularly, in describing CB-010's PD-1 knockout effect and the treatment's attendant clinical prospects, the Offering Documents stated, *inter alia*:

> We use Cas9 chRDNA guides to make three edits to manufacture CB-010. We introduce, with high efficiency and specificity, the gene encoding the CD19-specific CAR into the

8

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

gene encoding the T cell receptor alpha constant, or TRAC, a component of the native T cell receptor, or TCR. This simultaneously integrates the CD19 CAR site-specifically into the T cell genome and eliminates TCR expression to reduce the risk of graft versus host disease, or GvHD. *We also knock out the gene encoding the PD-1 protein in these cells to boost the persistence of CAR-T cell antitumor activity. We believe that the PD-1 knockout has the potential to reduce the likelihood of rapid tumor recurrence and potentially confer a better therapeutic index compared to other allogeneic CAR-T cells.* To our knowledge, CB-010 is the first allogeneic CAR-T cell therapy with a PD-1 knockout in clinical studies and it is being evaluated in our open-label, multicenter ANTLER phase 1 clinical trial in the United States in adults with relapsed or refractory B cell non-Hodgkin lymphoma (NCT04637763). We have dosed the first patient in this clinical trial. We expect to have initial data from this clinical trial in 2022.

(Emphasis added.)

40. With specific respect to the purported durability of CB-010's treatment effect, as afforded by the PD-1 knockout strategy, the Offering Documents stated, in relevant part:

One of the approaches we deploy to increase the persistence of CAR-T cell antitumor activity is to remove PD-1 from the CAR-T cell surface . . . . We believe that knocking out PD-1 will maintain the CAR-T cells in a higher antitumor state for a longer period of time, and we believe this will result in greater initial tumor debulking in the patient which will lead to long-term durability of CAR-T cell antitumor activity . . . . [O]ur preclinical *in vivo* data from experiments conducted in mouse xenograft models submitted as part of our CB-010 IND [Investigational New Drug Application] demonstrate that knocking out PD-1 leads to a significant increase in the durability of antitumor activity and therefore overall mouse survival. To our knowledge, our lead product candidate [CB-010] is the first allogeneic CAR-T cell therapy in a clinical study with a PD-1 knockout, and we believe will drive the durability of allogeneic CAR-T cell antitumor activity.

41. The statements referenced in ¶¶ 38-40 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) CB-010's treatment effect was not as durable as Defendants had led investors to believe; (ii) accordingly, CB-010's clinical and commercial prospects were overstated; and (iii) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

9

**Materially False and Misleading Statements Issued During the Class Period**

42.     The Class Period begins on July 23, 2021, when Caribou's common stock began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 38-40, *supra*.

43.     On September 2, 2021, Caribou issued a press release providing a business update and reporting the Company's second quarter 2021 financial results.  That press release stated, in relevant part, that treatment with the CB-010 therapy, *inter alia*, "boost[s] the persistence of CAR-T cell antitumor activity."

44.     Also on September 2, 2021, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2021 (the "2Q21 10-Q").  With respect to the purported durability of CB-010's treatment effect, the 2Q21 10-Q stated, in relevant part:

> Our lead product candidate, CB-010, is, to our knowledge, the first clinical-stage allogeneic anti-CD19 CAR-T cell therapy with [PD-1] removed from the CAR-T cell surface by a genome-edited knockout of the *PDCD1* gene. We have demonstrated in preclinical models that the PD-1 knockout improves the persistence of antitumor activity by disrupting a pathway that leads to rapid T cell exhaustion.

45.     Appended as exhibits to the 2Q21 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "[t]he [2Q21 10-Q] fully complies with the requirements of section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2Q21 10-Q] fairly presents, in all material respects, the financial condition and result of operations of the Company."

46.     On November 9, 2021, Caribou issued a press release providing a business update and reporting the Company's third quarter 2021 financial results.  That press release stated, in relevant part,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

that treatment with the CB-010 therapy, *inter alia*, "prevent[s] the expression of the PD-1 protein . . . with the intent of boosting the persistence of CAR-T cell antitumor activity."

47.     Also on November 9, 2021, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2021 (the "3Q21 10-Q").  That filing contained substantively the same statements as referenced in ¶ 44, *supra*, regarding CB-010, including its purported ability to improve the "persistence" of antitumor activity.

48.     Appended as exhibits to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 45, *supra*, signed by the Exchange Act Individual Defendants.

49.     On March 21, 2022, Caribou issued a press release reporting the Company's fourth quarter and full year 2021 financial results and providing a corporate update.  That press release stated, in relevant part:

> Caribou continues to enroll patients in ANTLER, a Phase 1 clinical trial of CB-010 in adults with [r/r B-NHL]. CB-010 is an allogeneic anti-CD19 CAR-T cell therapy engineered using Cas9 CRISPR hybrid RNA-DNA (chRDNA) technology to insert a CD19-specific CAR into the TRAC gene and knock out PD-1 to ***boost the persistence of antitumor activity***.

(Emphasis added.)

50.     Also on March 21, 2022, Caribou filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K").  That filing contained substantively the same statements as referenced in ¶ 44, *supra*, regarding CB-010, including its purported ability to improve the "persistence" of antitumor activity, while adding that Defendants "expect to disclose initial clinical data from this trial at a medical conference in 2022."

51.     The 2021 10-K also stated, *inter alia*, that "our preclinical *in vivo* data from experiments conducted in mouse xenograft models submitted as part of our CB-010 IND application demonstrate that

11

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

knocking out PD-1 leads to a significant increase in the durability of antitumor activity"; and that "we believe the PD-1 knockout will drive the durability of allogeneic CAR-T cell antitumor activity."

52.     Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 45, *supra*, signed by the Exchange Act Individual Defendants.

53.     On May 9, 2022, Caribou issued a press release reporting the Company's first quarter 2022 financial results and providing business updates.  That press release stated that, "[i]n April 2022, an abstract with initial clinical data from the ANTLER Phase 1 trial of CB-010 in adults with [r/r B-NHL] was accepted at EHA [the European Hematology Association]," without disclosing the purported significance of treatment durability observed in that data, if any, and while continuing to represent that treatment with the CB-010 therapy, *inter alia*, "boost[s] the persistence of antitumor activity."

54.     Also on May 9, 2022, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2022 (the "1Q22 10-Q").  That filing contained substantively the same statements as referenced in ¶ 44, *supra*, regarding CB-010, including its purported ability to improve the "persistence" of antitumor activity.

55.     Appended as exhibits to the 1Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 45, *supra*, signed by the Exchange Act Individual Defendants.

56.     On May 12, 2022, Caribou issued a press release announcing "Positive Initial Data for CB-010 Anti-CD19 Allogeneic CAR-T Cell Therapy".  That press release quoted Defendant Haurwitz, who stated:

> Our initial CB-010 data are exciting, and we believe these results show the potential to set a new therapeutic bar in treating patients with aggressive r/r B-NHL. These excellent initial outcomes represent important steps toward validating our chRDNA genome-editing platform as well as our plans for future development of CB-010 and our broader pipeline . . . . CB-010 is the first allogeneic anti-CD19 CAR-T cell therapy in the clinic with a PD-1 knock-out, a genome-editing strategy designed to limit premature CAR-T cell exhaustion, potentially leading to better tumor debulking and an improved therapeutic index through sustained antitumor activity. We are slated to present additional ANTLER interim data at

12

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

EHA next month and expect more data by year end as we continue to advance our lead program. Our overarching goal is to develop CB-010 such that it will meaningfully rival autologous cell therapies to reach broader groups of patients globally who are in need of off-the-shelf treatments.

57.     The statements referenced in ¶¶ 42-56 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) CB-010's treatment effect was not as durable as Defendants had led investors to believe; (ii) accordingly, CB-010's clinical and commercial prospects were overstated; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

58.     On June 10, 2022, during pre-market hours, Caribou issued a press release reporting "Positive Additional Data from CB-010 Allogeneic CAR-T Cell Therapy Phase 1 ANTLER Trial at the [EHA] 2022 Hybrid Congress" (the "June 2022 Press Release").  Among other results, that press release reported that "[a]t 6 months following the single dose of CB-010, 40% of patients remained in CR (2 of 5 patients) as of the May 13, 2022 data cutoff date."

59.     This observed tapering-off of CR after treatment with CB-010 understandably prompted investor concern over the durability of the CB-010 treatment.  For example, also on June 10, 2022, online investor news resource *Seeking Alpha* reported that "Caribou [was] in selloff after [the] data for cancer candidate [CB-010]" because "only two patients . . . remained on CR as of the May data cutoff." Similarly, a Bloomberg Intelligence analyst wrote that CB-010 "showed lower-than-desired durability, with a [CR] in two out of five patients at six months"; and an SVB Securities analyst wrote that the update "has bears [*i.e.*, pessimistic investors] arguing questions of durability of CR's among patients with the most aggressive disease".

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

60.     On this news, Caribou's stock price fell $1.78 per share, or 20.41%, to close at $6.94 per share on June 10, 2022.  Despite this decline in the Company's stock price, Caribou securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the durability of CB-010's treatment effect.

61.     For example, the June 2022 Press Release quoted Defendant Haurwitz, who stated, in relevant part:

> We believe the 100% [CR] achieved in the ANTLER CB-010 trial is unparalleled for a single, starting dose of cell therapy and represents an important step toward showing the potential of our chRDNA genome-editing platform and pipeline of allogeneic cell therapies . . . . As the first allogeneic anti-CD19 CAR-T cell therapy in the clinic with a PD-1 knockout, CB-010 is designed to have **sustained** antitumor activity by limiting premature CAR-T cell exhaustion in patients with r/r B-NHL.

(Emphasis added.)

62.     On August 9, 2022, Caribou issued a press release reporting the Company's second quarter 2022 financial results and providing a business update.  With respect to CB-010 and the ANTLER Phase 1 trial, that press release stated, in relevant part:

- ANTLER trial:
  - Encouraging clinical data from the ANTLER Phase 1 trial of CB-010 in patients with [r/r B-NHL] were presented in a poster at the [EHA] 2022 Hybrid Congress. A 100% [CR] rate (n=6) was observed as best response following a single dose of CB-010 at dose level 1 (40x106 CAR-T cells) . . . .

  - Following the EHA poster presentation, 1 additional patient had their 6-month evaluation, which showed they maintained a CR at 6 months, resulting in an overall 50% 6-month CR rate (n=6) for cohort 1 following a single, starting dose of CB-010.

  - Additionally, as disclosed concurrently with the EHA poster, the first patient treated with CB-010 maintained a CR at 12 months.

63.     The same August 9, 2022 press release also quoted Defendant Haurwitz, who described the ANTLER Phase 1 trial data as "encouraging" based on its  "100% [CR] rate as the best response at

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

dose level 1 in six patients with [r/r B-NHL]", while representing that "[t]he ANTLER data have exceeded our expectations and are an important step toward validating our chRDNA genome-editing platform" and that "[w]e are excited to advance our plans for future development of CB-010[.]"

64.     Also on August 9, 2022, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2022 (the "2Q22 10-Q").  That filing contained substantively the same statements as referenced in ¶ 44, *supra*, regarding CB-010, including its purported ability to improve the "persistence" of antitumor activity.

65.     Appended as exhibits to the 2Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 45, *supra*, signed by the Exchange Act Individual Defendants.

66.     On November 8, 2022, Caribou issued a press release reporting third quarter 2022 financial results and providing a business update.  With respect to CB-010 and the ANTLER Phase 1 trial, that press release reiterated previously reported results that "6 of 6 patients (100%) achieved a CR as their best response"; that "3 of 6 patients (50%) maintained a CR at 6 months"; and that "15 months has been the longest CR, achieved by the first patient dosed with CB-010", while also highlighting that, "[i]n October 2022, a poster for a case report on long-term follow up for the first patient dosed in the ANTLER Phase 1 trial was presented at the Lymphoma, Leukemia, & Myeloma (LL&M) Congress", which showed "[t]his patient achieved a [CR] at day 28 and maintained a long-term CR at 15 months following a single dose of CB-010 at dose level 1 (40x106 CAR-T cells)."

67.     The same November 8, 2022 press release quoted Defendant Haurwitz, who stated, in relevant part:

We have seen highly promising results from our lead allogeneic cell therapy, CB-010, at the lowest starting dose in the ANTLER clinical trial in patients with [r/r B-NHL] . . . . The . . . antitumor activity for CB-010 at dose level 1 are encouraging, and we look forward to generating additional efficacy and durability data from the dose escalation phase of the ANTLER trial.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

68.     Also on November 8, 2022, Caribou filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2022 (the "3Q22 10-Q").  That filing contained substantively the same statements as referenced in ¶ 44, *supra*, regarding CB-010, including its purported ability to improve the "persistence" of antitumor activity.

69.     Appended as exhibits to the 3Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 45, *supra*, signed by the Exchange Act Individual Defendants.

70.     The statements referenced in ¶¶ 61-69 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) CB-010's treatment effect was not as durable as Defendants had led investors to believe; (ii) accordingly, CB-010's clinical and commercial prospects were overstated; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Fully Emerges**

71.     On December 12, 2022, during pre-market hours, Caribou issued a press release "report[ing] new 12-month clinical data from cohort 1 in the ongoing ANTLER Phase 1 trial, which [purportedly] show[ed] long-term durability following a single infusion of CB-010 at the initial dose level 1 (40x106 CAR-T cells)."  Specifically, that press release stated, in relevant part:

Cohort 1 results show:

- 6 of 6 patients achieved a [CR] as best response

- ***3 of 6 patients maintained a durable CR at 6 months***

- ***2 of 6 patients maintain a long-term CR at the 12 month scan and remain on the trial***

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- 18 months is the longest CR maintained to date in ANTLER, achieved by the first patient dosed with CB-010

(Emphases added.)  Accordingly, concerns that the CB-010 treatment lacked significant durability were confirmed, despite repeated assurances by Defendants to the contrary.

72.     On this news, Caribou's stock price fell $0.81 per share, or 9.03%, to close at $8.16 per share on December 12, 2022.

73.     As of the time this Complaint was filed, Caribou common stock continues to trade below the $16.00 per share Offering price, damaging investors.

74.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Caribou's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Caribou common stock in the IPO or purchased Caribou common stock thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; and/or (b) Caribou securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

76.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Caribou securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Class.  Record owners and other members of the Class may be identified from records maintained by Caribou or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

77.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

78.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

79.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Caribou;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Caribou to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Caribou securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

18

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

80.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

81.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Caribou securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Caribou securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

82.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

83.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 11 of the Securities Act Against All Defendants)**

84.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

85.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

86.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

87.     Caribou is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

88.     As issuer of the shares, Caribou is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

89.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

90.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

91.     Plaintiff acquired Caribou shares pursuant and/or traceable to the Offering Documents for the IPO.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

92.   Plaintiff and the Class have sustained damages.   The value of Caribou securities has declined substantially subsequent to and because of Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

93.   Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

94.   This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

95.   The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Caribou within the meaning of Section 15 of the Securities Act.   The Securities Act Individual Defendants had the power and influence and exercised the same to cause Caribou to engage in the acts described herein.

96.   The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

97.   By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## COUNT III

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

98.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

99.   This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

100.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Caribou securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Caribou securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

101.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Caribou securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Caribou's finances and business prospects.

102.     By virtue of their positions at Caribou, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

103.    Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Caribou, the Exchange Act Individual Defendants had knowledge of the details of Caribou's internal affairs.

104.    The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Caribou.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Caribou's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Caribou securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Caribou's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Caribou securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

105.     During the Class Period, Caribou securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Caribou securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Caribou securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Caribou securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

106.     By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

107.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

### <u>COUNT IV</u>

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

108.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

109.   During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Caribou, and conducted and participated, directly and indirectly, in the conduct of Caribou's business affairs.  Because of their senior positions, they knew the adverse non-public information about Caribou's misstatement of income and expenses and false financial statements.

110.   As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Caribou's financial condition and results of operations, and to correct promptly any public statements issued by Caribou which had become materially false or misleading.

111.   Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Caribou disseminated in the marketplace during the Class Period concerning Caribou's results of operations.  Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Caribou to engage in the wrongful acts complained of herein. The Exchange Act Individual Defendants therefore, were "controlling persons" of Caribou within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Caribou securities.

112.   Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Caribou.  By reason of their senior management positions and/or being directors of Caribou, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Caribou to engage in the unlawful acts and conduct complained of herein.  Each of the Exchange Act Individual Defendants exercised control over the general operations of Caribou and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

113.    By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Caribou.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  February 10, 2023                          Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS